THOMPSON, trustee, *v.* GRAHAM.

No. 7590.   FEBRUARY 10, 1931.

*W. A. Slaton,* for plaintiff. *Earle Norman,* for defendants.

RUSSELL, C. J. ■ Upon examination of the record it does not appear that the plaintiff was harmed by the ruling disallowing his second amendment, because everything contained in it was brought out in the trial and submitted by the court to the jury. Aside from this the court did not err in disallowing the amendment, because we think it contained conclusions of law not supported by the allegations of fact. If our conclusion is correct, it will be demonstrated by our ruling upon the grounds of the motion for a new trial which present the same questions. At most, the only effect of the ruling was to submit an issue of fraud to the jury, rather than for the judge to conclude the case by direction of a verdict, if the legal conclusions contained in the amendment were sound law. From the amendment as offered the court could not determine, without the statement of some facts on which to base his judgment, whether the judgment rendered in November, 1927, was in form and effect a common-law judgment, or whether the lien of the plaintiff as trustee was superior to the lien of the judgment, or whether the sheriff's sale was void for the reason that it would take the administration of the estate of C. W. Graham out of the bankruptcy court and place it in the State court. Certainly the amendment should have stated some reason why the deed to John W. Fanning, to secure a debt, made the judgment in behalf of Charlie Graham void and of no effect. It might have appeared that Fanning obtained his deed at a date subsequent to the note and mortgage of Charlie Graham, or a statement of the contents of Fanning's paper might have disclosed (as was afterwards brought out on the trial) that his paper was executed by the debtor, and accepted by Fanning, as subject to the debt of C. W. Graham to his father, Charlie Graham. The Fanning deed being recorded in Irwin County, it is not clear why, after an inspection of the record, the sheriff was not authorized to proceed with the levy of the execution from Wilkes superior court, or why the trustee in bankruptcy would obtain any

more priority than inhered in Fanning himself—a priority which Fanning himself had waived by acceptance of a deed from C. W. Graham containing the express proviso that it was inferior to the indebtedness in favor of Charlie Graham. It is an axiom that the trustee in bankruptcy gets everything which belongs to the bankrupt. He stands in the bankrupt's shoes, but he gets no more than the bankrupt owns. So we hold that the adjudication in bankruptcy did not enlarge the interest of the trustee to greater dimensions than that possessed by the bankrupt prior to the adjudication in bankruptcy, and certainly could not give to Fanning a priority which did not exist at the time he accepted his security deed. There was no error in the refusal to allow the proffered amendment.

■ The motion for a new trial complains that the court admitted in evidence an execution from Wilkes superior court, in favor of Charlie Graham against C. W. Graham, for $3800 principal, with interest, attorney's fees, and costs, general in form, and containing, in addition to the usual language commanding levy to be made, the words "and especially of" the twenty-five acres of land in Irwin County now in dispute, fully described. On the back of the execution was an entry of levy, a return of sale of the property on March 6, 1928, in accordance with the levy, to Charlie Graham for $1400, and a statement of the distribution of the proceeds of the sale. It is assigned as error that the court admitted in evidence, in connection with the execution, a deed from Tyler, sheriff of Irwin County, to Charlie Graham, based on the above execution and levy, with proper recitals, conveying the land described in the execution, over objection that the execution was a common-law execution from Wilkes superior court, rendered after C. W. Graham had been adjudicated a bankrupt and after the trustee had actually filed this bill in equity, because Charlie Graham had brought suit on the note secured by mortgage, and the lien against the land described in the deed and execution was not a special lien authorized by law, but the security held by Charlie Graham for the note being only a mortgage, it could be enforced only by foreclosure, and that Wilkes superior court had no jurisdiction. A further objection was that at the time of the levy by the sheriff of Irwin County there was of record in Irwin County a deed executed by C. W. Graham to J. W. Fanning, con-

veying the same land, which had not been paid off, nor had Fanning reconveyed the title to Graham before the levy and sale, and therefore the execution and sheriff's deed passed no title to the land described in the sheriff's deed. We have already referred to the deed from C. W. Graham to J. W. Fanning. This deed contained an express stipulation or covenant that it was subject to the debt of the grantor to Charlie Graham. This recital made it unnecessary for Fanning to reconvey the land to C. W. Graham unless and until the debt to Charlie Graham had been paid. In fact he had agreed that he would not sue upon the obligation in his favor until Charlie Graham was paid. If the debt of Charlie Graham was evidenced by a mortgage, Fanning himself stipulated, in effect, that his right to sell the land was postponed to Charlie Graham's right to sell the land by mortgage foreclosure, and the most he could have done would have been to intervene in the foreclosure of the mortgage in equity, and ask that in the sale of the property under mortgage foreclosure the balance of the fund arising from the sale under the equitable foreclosure, after the payment of the demand of Charlie Graham, should be paid to him. Neither law nor equity makes contracts for the parties in any proceeding, though both law and equity enforce them as made. The trustee in bankruptcy in this case, as the representative of the creditors of C. W. Graham, can not secure for them any greater rights than those to which they are entitled by their own undertaking. Fanning can not acquire, by reason of the bankruptcy act, any interest which he never at any time possessed. At no time has Fanning ever had the right to be paid from the assets of C. W. Graham in advance of Charlie Graham, and never was there any priority as to Fanning's claim, save that conveyed by a common grantor to Charlie Graham. For that reason the lower court was authorized to admit the deed and execution to which objection was made, and it would seem to be a useless consumption of time to deal with each and every assignment of error specifically, except that relating to the jurisdiction of the superior court of Wilkes County in the foreclosure of the mortgage, or the decreeing that a special lien be created as to the land embraced in that mortgage, which was located in Irwin County. The Civil Code (1910) expressly provides (§ 3305) that mortgages may be foreclosed in equity, as this was foreclosed. In equity a suit may be brought in the county of the

residence of the defendant against whom substantial relief is prayed. The mortgagor, C. W. Graham, was a resident of Wilkes County, and we know of no rule by which the mortgagee was precluded from foreclosing his mortgage in the county of the residence of his mortgagor, although the property securing the mortgage was located in another county. For the reason already stated, it was immaterial whether the execution was obtained after C. W. Graham had been adjudicated a bankrupt, and even though the trustee had actually filed this bill in equity; these suggestions being based upon the alleged lack of jurisdiction in the superior court of Wilkes County. The adjudication in bankruptcy was in February, 1927. The deed executed on February 8, 1922, by C. W. Graham to John W. Fanning, for a consideration of $2290, which conveyed to Fanning the 25 acres of land in Irwin County, Georgia, described in plaintiff's petition and also described in the sheriff's deed from W. E. Tyler to Charlie Graham, contained the following recital: "This deed is given to secure a debt. This land is subject to a prior claim of thirty-eight hundred ($3800.00) dollars in favor of Charley Graham, which is due January 1, 1924, with interest from maturity, and with the understanding that said prior claim shall not be sued or foreclosed on said land or said land be sold under said prior claim at any time between now and the maturity thereof, without the consent of said party of the second part." So we see that the very deed which the trustee is trying to enforce for the benefit of Fanning as a creditor contains an acknowledgment by Fanning of the amount of the indebtedness (which was contested in the trial of this case by the trustee upon the ground that the debt as evidenced by the mortgage was $38 instead of $3800) in favor of Charlie Graham as being $3800, and the inferiority of his debt for $2290. From this it would seem that Fanning himself would be estopped to contend that the real amount of the debt was different from that stated in his deed, or than that stated in the upper left corner of the mortgage delivered to Charlie Graham. It would seem to be unnecessary for this court to deal with alleged errors concerning the proof admitted in behalf of the plaintiff to establish that there was a fraud, and that in three instances the scrivener by mistake entered the words thirty-eight instead of the words thirty-eight hundred; this even though the trustee in bankruptcy could go behind the solemn judgment of Wilkes superior

court and impeach its judgment and decree awarding Charlie Graham a special lien upon the property and a judgment for $3800, and attack it for fraud. It seems very clear that there is no merit in the contention that the sheriff of Irwin County could not proceed with the levy of the mortgage fi. fa. without J. W. Fanning executing a deed of reconveyance to C. W. Graham. The law requires that before Fanning could have proceeded to collect his debt, he would have to reconvey title to the land to C. W. Graham for the purpose of levy and sale, and have his deed of reconveyance duly recorded in Irwin County; but we know of no rule of law which requires a plaintiff in fi. fa., in a mortgage foreclosure, to wait upon the collection of his debt as a condition precedent to proceeding to enforce his special lien upon the land, for the holder of the security deed has his remedy, if any, by interposing a claim. However, all this is immaterial in this case, because Fanning, by accepting the deed from C. W. Graham, expressly admitted that whatever remedy he had was subject to be divested by the claim of Charlie Graham of $3800.00.

■ ■ The rulings stated in the third and fourth headnotes require no elaboration, in view of the facts stated in the preceding division.

■ We have carefully examined the evidence, which fully authorized the jury to find that the debt for which a note was given by C. W. Graham to Charlie Graham, his father, in the sum of $3800, and which was secured by a mortgage which correctly stated should have evidenced a debt for a like amount, was a fair and honest subsisting debt, free from any fraud. The evidence that the debt of C. W. Graham to J. W. Fanning was voluntarily placed by J. W. Fanning in a position of inferiority to that of C. W. Graham to his father, by his acceptance of the security deed for an old debt, is undisputed. The debt due by C. W. Graham to him was the balance of the purchase-price of a house and lot in the town of Washington, which had been returned by C. W. Graham to J. W. Fanning and sold by Fanning to another purchaser, and it does not appear that Fanning suffered any real loss in retaking the house and selling it to another purchaser, inasmuch as Graham had made payments on the purchase-price before he voluntarily delivered possession of the premises to his creditor. It is not necessary to recite various circumstances which supported the finding of the

jury. It is enough to say that the evidence supported the verdict, and that the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Beck, P. J., absent for providential cause.*